**In re James and Clara PETERSON, Debtors.**

**Bankruptcy No. 91–50868.**
**No. 34.**

United States Bankruptcy Court,
D. Connecticut.

Feb. 17, 1994.

Andrew F. Fink, Mark S. Carron, Carron, Grace, Weinstein & Fink, Westport, CT, for debtors.

Peter J. Betsos, pro se.

## MEMORANDUM AND ORDER ON MOTION TO DISGORGE FEES

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtors move to recover the fees paid to Peter Betsos ("Betsos"), who no longer represents them, and Earl Glancy ("Glancy") d/b/a New England Marketing ("NEM"). For the reasons that follow, the motion is granted as to Betsos and denied as to Glancy.

### BACKGROUND

In December 1990, Glancy contacted the debtors and offered his financial services to assist them in forestalling impending foreclosures on their property. On December 28, 1990, the debtors made the first of eight weekly payments of $937.50, so that by February 16, 1991, they had paid Glancy $7,500.00.

In January 1991, Glancy asked Betsos to represent the debtors and endorsed to his order one of the checks they had written to Glancy/NEM. Betsos also received $500.00 on February 6, 1991, and several subsequent payments from Northeastern Marketing, Inc., a bank account established by Glancy/NEM to segregate client funds for the purpose of paying attorneys when their services were required. Two of the payments to Betsos were post-petition: $300.00 on June 5, 1991, and $500.00 on June 19, 1991. In all, Betsos received $2,756.50 from the debtors through Glancy/NEM and Northeastern Marketing, Inc. They paid no money directly to Betsos. They were aware that Glancy was paying Betsos with some of the money they sent to Glancy, but they did not know the amount of the fees. The debtors signed a waiver of attorney-client privilege, permitting Betsos to speak with Glancy about their bankruptcy case. There was no other written agreement between Betsos and the debtors.

Betsos is not licensed to practice law in Connecticut. He is licensed in New York, and is admitted to practice in the federal district courts for the district of Connecticut and the southern and eastern districts of New York. He has had no office in New York since approximately 1983. Betsos has a law office in Stamford, Connecticut where he has provided legal services by telephone in bankruptcy matters. Moreover, he has prepared pleadings in that office for filing in bankruptcy court. He has not met with clients at his office, but he has met with them at other locations in Connecticut. His stationery lists his Stamford office address and states that he is an attorney-at-law. He has represented debtors in five other cases before this court. *See Statement*, filed March 18, 1993.

On February 9, 1991, Betsos met with the debtors at their home in Norwalk, Connecticut, to discuss their legal options and advised them to commence a chapter 11 proceeding. On April 9, 1991, the debtors commenced this case. The legal services Betsos has provided include telephone calls from his office on bankruptcy and state court foreclosure matters; preparation and filing of the debtors' bankruptcy petition, schedules, and statements; review and preparation of bankruptcy documents; settlement negotiations with creditors' attorneys; correspondence with a receiver of rents appointed by the Connecti-

cut superior court regarding that receiver's duties under Connecticut law; appearances in this court; and attendance at § 341(a) meetings.

Betsos performed six hours of prepetition and fifty hours of postpetition services.[1] On June 14, 1991, Betsos filed a statement pursuant to Rule 2016(b), Fed.R.Bankr.P., which disclosed that he received $3,000.00 prior to the filing of the statement. In fact, Betsos had received $2,256.50, and he received an additional $500.00 payment four days *after* that statement was filed. The statement indicated that the $3,000.00 was paid by the debtors from their earnings. It did not disclose any relationship with Glancy, NEM, or Northeastern Marketing, Inc., and did not indicate whether the $3,000.00 was held as a security retainer or otherwise. Neither Betsos nor the debtors moved to have Betsos appointed as attorney, and an order has not entered under § 327 and Rule 2014 F.R.Bankr.P. approving his employment. On June 26, 1992, the debtors filed an application to employ new counsel which was granted. On November 3, 1992, the new counsel filed the instant motion seeking the disgorgement of all fees paid to Glancy/NEM and Betsos.

## DISCUSSION

### I.

### EMPLOYMENT OF ATTORNEY

11 U.S.C.A. § 327(a) (West 1993) provides: Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 327(a) applies to attorneys for debtors in possession in chapter 11 cases. *See* § 1107(a).

11 U.S.C.A. § 329 (West 1993) provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C.A. § 330(a) provides in relevant part:

After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 327, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney ...

Rule 2014(a), Fed.R.Bankr.P., states the procedure for obtaining approval of employment and provides in relevant part:

An order approving the employment of attorneys ... or other professionals pursuant to § 327 ... shall be made only on application of the trustee ... [stating] the specific facts showing the necessity for the

---

1. Betsos claimed another two hours of work for filing the petition. *See Court's Exhibit 1.* It is noted that travel time to and from court is not compensable from property of the estate under

Rule 25(a)(5), Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the District of Connecticut (West 1993).

employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [or] any other party in interest.... The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest....

Betsos argues that notwithstanding his failure to obtain court authorization under § 327(a), he may nevertheless keep the money paid to him because he did not seek compensation from the estate and therefore was not required to obtain court authorization. I disagree.

■ At the outset, it is observed that the mere fact that most of Betsos's fee was paid prepetition does not justify the conclusion that the debtors lost an interest in that money or that it could not be properly considered property of their bankruptcy estate. Neither Glancy/NEM nor Northeastern Marketing, Inc., ever claimed an interest in those fees. They were merely a conduit for passing the fees from the debtors to Betsos. Applicable ethical rules generally require Betsos to hold client funds in a separate account and to return any unearned fees at the conclusion of the representation. *See* Connecticut Rules of Professional Conduct (West 1993), Comment to Rule 1.5 ("A lawyer may require advance payment of a fee, but is obliged to return any unearned portion."); Rule 1.15(a) (a lawyer must segregate client property in his possession); Rule 1.16(d) (upon termination of representation, a lawyer must refund unearned fees paid in advance); Local Rules of Civil Procedure for the United States District Court for the District of Connecticut (West 1993), Rule 3(a) (Connecticut Rules of Professional Conduct generally govern attorneys practicing before the District Court for the District of Connecticut). The

thrust of those rules is that prepetition retainers are generally considered property of the bankruptcy estate and are reviewed by the court at the conclusion of the case under § 330(a). *See In re Mondie Forge Co.*, 154 B.R. 232, 238 (Bankr.N.D.Ohio 1993).

While Betsos characterizes the payments to him as a "flat fee," the post-petition payment of a large percentage of that fee belies that characterization. Moreover, he offered no evidence of any agreement with the debtors that his fee was earned in full prepetition irrespective of the amount and quality of his work. *See In re Dees Logging, Inc.*, 158 B.R. 302, 306 (Bankr.S.D.Ga.1993); *In re Mondie Forge Co.*, *supra*, 154 B.R. at 237–38 (in the absence of evidence that counsel was paid a nonrefundable flat fee retainer, the court would review post-petition services under § 330(a) standard); *In re Printing Dimensions, Inc.*, 153 B.R. 715, 722–24 (Bankr. D.Md.1993).[2] Although the debtors were unaware of the amount of Betsos's fee at the inception of the case, they clearly expected that it would cover not only the commencement of their case, but also its prosecution to a conclusion. That Betsos did not do.

■ Further, Betsos did not comply with Rule 2014(a), which would have required him to disclose the nature of any arrangement for compensation. Having thus evaded court scrutiny of that alleged flat fee arrangement, he may not now be heard to attempt to enforce it against the debtors. Having concluded that there was no agreement for a so-called "earned retainer" or "flat fee," I need not reach the issue of whether such an agreement is reasonable in the context of a chapter 11 case. *Compare In re Bread & Chocolate, Inc.*, 148 B.R. 81, 82–83 (Bankr.D.D.C. 1992) and *In re NBI, Inc.*, 129 B.R. 212, 222 (Bankr.D.Colo.1991) (nonrefundable engagement retainers are not permitted in chapter 11 cases) *with In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 1002–03 (Bankr.N.D.Ill. 1990) (recognizing such an arrangement).

---

**2.** In view of the fact that Betsos's Rule 2016(b) statement disclosed the fees were paid by the debtors, and not by Glancy/NEM, Betsos should have confirmed in writing the existence of any flat fee agreement with the debtors. *See* Rule 1.5(b), Connecticut Rules of Professional Conduct (West 1993); Connecticut Bar Association Informal Opinion 90–29 (Nov. 29, 1990).

As the fees were property of the estate, Betsos was required by § 330(a) to file an application for their approval, and having failed to do so, he may not keep that money.

■ A more fundamental basis for the conclusion that Betsos must disgorge his fee is that he failed to seek approval of his employment under § 327(a) and Rule 2014(a). That subsection is designed "to prevent conflicts of interest.... which 'erode the confidence of other parties in the administration of ... [the] estate to say nothing of public confidence in the administration of justice in bankruptcy courts.'" *In re Fretheim,* 102 B.R. 298, 299 (Bankr.D.Conn. 1989) (quoting *In re Intech Capital Corp.,* 87 B.R. 232, 236 (Bankr.D.Conn.1988)). *See In re Black Hills Greyhound Racing Ass'n,* 154 B.R. 285, 292 (Bankr.D.S.D.1993) ("The purpose of this [Rule 2014(a)] disclosure is to give the court the necessary information to determine whether the attorney is qualified to represent the debtor.... Compliance with Rule 2014 protects the integrity of the bankruptcy process.") (citation omitted); *In re Tinley Plaza Assocs., L.P.,* 142 B.R. 272, 277 (Bankr.N.D.Ill.1992) ("Section 327(a) is strictly enforced because it impacts the integrity of the bankruptcy system as a whole.").

■ While employment under § 327(a) is a condition precedent to compensation from the estate under § 330(a), the requirements of § 327(a) are not conditioned on the attorney's seeking compensation from the estate under § 330(a). *In re Hargis,* 148 B.R. 19, 22 (Bankr.N.D.Tex.1991); *In re Rheuban,* 121 B.R. 368, 385 (Bankr.C.D.Cal.1990); *Land v. First Nat'l Bank in Alamosa (In re Land),* 116 B.R. 798, 805 (D.Colo.1990) (approval must be obtained under § 327(a) even where fees are paid by a third party and not by the estate), *aff'd,* 943 F.2d 1265 (10th Cir.1991); *In re Martin,* 102 B.R. 653, 658 (Bankr.W.D.Tenn.1989) ("[T]he mere fact that a professional receives a retainer cannot be utilized by the professional as a circumvention of the Bankruptcy Code's require-

ment of an approval of employment...."); *In re Bohl Ristorante, Inc.,* 99 B.R. 971, 973 (9th Cir. BAP 1989). A contrary rule would permit attorneys for the trustee or debtor in possession to avoid the strictures of § 327(a) and Rule 2014(a) by demanding a large prepetition retainer and never applying to the court for compensation post-petition.

Betsos's reliance on *Matter of Fulton,* 80 B.R. 1009 (Bankr.D.Neb.1988) and *In re McDonald Bros. Constr., supra,* 114 B.R. 989, is misplaced. Those cases held that no *fee application* need be filed where an attorney seeks no compensation beyond a flat fee paid prior to the petition filing. Neither held that no *employment application* is required in that situation.[3]

■ As a general rule, the consequence of failure to make full disclosure under § 327(a) and Rule 2014(a) is the denial of all compensation for post-petition services. *Futuronics Corp. v. Arutt, Nachamie & Benjamin (Matter of Futuronics Corp.),* 655 F.2d 463, 469 (2d Cir.1981) ("[I]t has long been the practice in this Circuit to deny compensation to counsel who fail to comply with the disclosure provisions contained in [the predecessor to § 327(a) and Rule 2014(a)]."), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Envirodyne Indus., Inc.,* 150 B.R. 1008, 1015 n. 8 (Bankr.N.D.Ill.1993); *In re Rundlett,* 137 B.R. 144, 146 (Bankr. S.D.N.Y.1992). Obviously, where *no* disclosure is made because no § 327(a) application was filed, denial of all compensation for post-petition services rendered is also appropriate. *DeRonde v. Shirley (In re Shirley),* 134 B.R. 940, 943 (9th Cir. BAP 1992) ("Court approval of the employment of counsel for a debtor in possession is the *sine qua non* to counsel getting paid."); *In re Leek,* 128 B.R. 832, 834 (Bankr.M.D.Fla.1991). It would indeed be anomalous if an attorney could retain fees by depriving the court of an opportunity to evaluate disinterestedness under § 327(a), while an attorney who at least attempted disclosure but was disqualified could not. Further, it is irrelevant that a profes-

---

3. The attorneys in *In re McDonald Bros. Constr., Inc.,* had received court approval under § 327(a). 114 B.R. at 992. The court in *Matter of Fulton* did not indicate whether an appointment had

been made under § 327(a), but the issues treated were limited to the requirements for fee applications. 80 B.R. at 1010.

sional's services benefitted the estate if the professional did not receive approval under § 327(a). *See Matter of Futuronics Corp.,* *supra,* 655 F.2d at 471 (fact that attorneys' services benefitted the bankruptcy estate did not entitle them to compensation where they failed to seek an order of employment and to make required disclosures); *In re Rusty Jones, Inc.,* 134 B.R. 321, 341 (Bankr.N.D.Ill. 1991); *In re Grabill Corp.,* 113 B.R. 966, 971 (Bankr.N.D.Ill.1990), *aff'd,* 135 B.R. 835 (N.D.Ill.1991), *aff'd,* 983 F.2d 773 (7th Cir. 1993).[4]

█ I concur with those courts which have held that an attorney who never seeks an order of employment, or who could not qualify for appointment due to a lack of disinterestedness, should not be permitted to apply a prepetition retainer to services rendered post-petition. *See In re Weibel, Inc.,* 161 B.R. 479, 484 (Bankr.N.D.Cal.1993) (a firm which was not disinterested could not apply a prepetition retainer to its fees under *quantum meruit* or other theories); *In re Granite Sheet Metal Works, Inc.,* 159 B.R. 840, 848–49 (Bankr.S.D.Ill.1993) (a law firm which failed to make an adequate Rule 2014(a) disclosure was required to forfeit all compensation for post-petition services, including a retainer held in trust); *In re Black Hills Greyhound Racing Ass'n, supra,* 154 B.R. at 287, 295–97; *In re Leek, supra,* 128 B.R. at 834.

While Betsos's failure to seek approval under § 327(a) precludes his compensation for post-petition services, which constitute the bulk of the services he rendered, arguably Betsos could be compensated for his prepetition services to the extent of their reasonable value under § 329(b). *See Matter of Wiredyne, Inc.,* 3 F.3d 1125, 1127–28 (7th Cir.1993). In view of my holding below that Betsos engaged in the unauthorized practice of law, I need not determine the reasonable value, if any, of those services.

## II.

## UNAUTHORIZED PRACTICE OF LAW

### A. Practice In Federal Courts

█ Conn.Gen.Stat.Ann. § 51–88(a) (West Supp.1993) provides in relevant part:

> A person who has not been admitted as an attorney under the provisions of section 51–80 shall not: (1) Practice law or appear as an attorney-at-law for another, in any court of record in this state, (2) make it a business to practice law, or appear as an attorney-at-law for another in any such court, (3) make it a business to solicit employment for an attorney-at-law, (4) hold himself out to the public as being entitled to practice law, (5) assume to be an attorney-at-law, (6) assume, use or advertise the title of ... attorney-at-law, ... attorney, ... or an equivalent term, in such manner as to convey the impression that he is a legal practitioner of law....

> Rule 2 of the Local Rules of Bankruptcy Procedure (West 1993) (L.R.Bankr.P.) of this court provides:

> Only persons admitted to practice in the United States District Court for the District of Connecticut or admitted as visiting lawyers pursuant to the Local Rules of

---

4. Where an untimely § 327(a) application is made, "[t]here is ... a narrow exception which permits approval of an appointment *nunc pro tunc* when the failure to timely file an application is the result of 'excusable neglect' or would result in an 'unavoidable hardship.' Those standards cannot be met unless the circumstances which led to the failure to timely file were beyond the reasonable control of the party filing the application." *In re Robotics Resources R2, Inc.,* 117 B.R. 61, 62 (Bankr.D.Conn.1990) (citations omitted). Attorney oversight or error does not satisfy that exception. *See In re Hazen Agric. Prods. Serv., Inc.,* 109 B.R. 602, 604 (Bankr.W.D.N.Y. 1990). Here Betsos never even filed a *nunc pro tunc* application for employment. Only the debtors' decision to retain new counsel brought Betsos's delinquency to the court's attention. To permit him to retain his compensation under those circumstances would nullify the prohibition against compensating a professional who renders services without having obtained prior court approval. My conclusion would be the same under a standard which would allow *nunc pro tunc* employment where the failure to file a timely application "has been reasonably explained," *see In re Corbi,* 149 B.R. 325, 333 (Bankr.E.D.N.Y.1993), and under the excusable neglect standard adopted by the Supreme Court in the context of Rule 9006(b)(1), Fed.R.Bankr. P., *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993).

Civil Procedure shall *practice in the Bankruptcy Court.*

(emphasis added).

Rule 2(a) of the Local Rules of Civil Procedure for the United States District Court for the District of Connecticut (L.R.D.C.) provides in relevant part: [5]

> Any attorney of the bar of the State of Connecticut or of the bar of any United States District Court whose professional character is good may be admitted to *practice in this Court* upon motion of any attorney of this Court and upon taking the proper oath....

(emphasis added).

■ I find at the outset that Betsos's activities constituted the practice of law. The practice of law is not limited to appearing before state courts; it includes giving legal advice and drafting documents regardless of whether it occurs in a "court of record," [6] and regardless of whether the practice is carried on as a business. *Grievance Comm. of the Bar of Fairfield County v. Dacey,* 154 Conn. 129, 140, 222 A.2d 339 (1966), *appeal dism'd,* 386 U.S. 683, 87 S.Ct. 1325, 18 L.Ed.2d 404 (1967).

> The practice of law consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces the giving of legal advice on a large variety of subjects and the preparation of legal instruments covering an extensive field....

*State Bar Ass'n of Connecticut v. Connecticut Bank and Trust Co.,* 145 Conn. 222, 234–35, 140 A.2d 863 (1958); *see also Monroe v. Horwitch,* 820 F.Supp. 682, 686 (D.Conn. 1993) (the preparation of documents in divorce actions constitutes the practice of law under § 51–88). "[I]t is clear that § 51–88 forbids the performance of any act both in and out of court that is commonly understood to be the practice of law by persons not admitted to the bar...." *Windover v. Sprague Technologies,* 834 F.Supp. 560, 566 (D.Conn.1993); *Grievance Committee of Bar of New Haven County v. Payne,* 128 Conn. 325, 330, 22 A.2d 623 (1941).

Betsos maintained a law office in Connecticut; he met with the debtors and several other clients in Connecticut; he made phone calls from his office on legal matters; his letterhead indicated he was an attorney-at-law; he advised the debtors regarding the advisability of filing a bankruptcy petition, which chapter of the code to file under, and their rights and duties under the code; he prepared and filed several bankruptcy petitions and schedules; he reviewed and prepared bankruptcy documents; he corresponded with a receiver of rents appointed under Connecticut law; he appeared in court and negotiated with creditors on his clients' behalf; and he attended § 341(a) meetings.

There are two theories under which it could be argued that Betsos may practice law: (i) Conn.Gen.Stat. § 51–88(a) does not prohibit that practice; and (ii) he may practice law notwithstanding § 51–88(a).

■ Under the first theory, it would be argued that § 51–88(a) does not apply because Betsos limited his practice to federal law and never advised his clients on matters of Connecticut law. Even if that were so, Betsos would still be engaged in the practice of law as defined by Connecticut and bankruptcy courts. *See supra; see also State Unauthorized Practice of Law Comm. v. Paul Mason & Assocs., Inc.,* 159 B.R. 773, 778–79 (N.D.Tex.1993); *In re Harris,* 152 B.R. 440, 444–46 (Bankr.W.D.Pa.1993); *In re Bachmann,* 113 B.R. 769, 773–74 (Bankr. S.D.Fla.1990). One who advises clients on matters arising under the laws of jurisdictions other than the state in which his or her practice is located is engaged in the practice of law in his or her state. *See Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 165 (en banc) (2d Cir.), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966) (unlawful practice under New York law extends to advice involving federal antitrust law); *Per-*

---

**5.** Rule 2(d) L.R.D.C. relates to admission of visiting lawyers. Betsos does not rely on that rule.

**6.** While § 51–88 does not define "court of record," Conn.Gen.Stat.Ann. § 51–1a(a) (West Supp.1993) lists the courts constituting the Judicial Department of the State of Connecticut. The list does not include the federal district or bankruptcy courts.

*lah v. S.E.I. Corp.*, 29 Conn.App. 43, 612 A.2d 806, 808 (1992) (an attorney licensed only in New York who maintained a Connecticut office and whose services consisted primarily of assisting his clients in obtaining a controlling interest in a New York corporation was engaged in the unauthorized practice of law); *Taft v. Amsel*, 23 Conn.Sup. 225, 227, 180 A.2d 756, 757 (1962) (a New York attorney could not recover a fee for legal services relating to interstate transportation business rendered primarily in Connecticut to Connecticut residents); *Kennedy v. Bar Ass'n of Montgomery County, Inc.*, 316 Md. 646, 662–63, 561 A.2d 200, 208–09 (1989), and cases cited therein; *In re Roel*, 3 N.Y.2d 224, 229, 165 N.Y.S.2d 31, 34, 144 N.E.2d 24, 26 (1957), *appeal dism'd*, 355 U.S. 604, 78 S.Ct. 535, 2 L.Ed.2d 524 (1958); *Ranta v. McCarney*, 391 N.W.2d 161, 162 n. 1, 164–66 (N.D.1986).

Further, bankruptcy law is in many instances only a federal overlay to applicable state law. State law issues are inevitably and inextricably intertwined with bankruptcy law issues; applicable state law applies in every instance in which the code does not provide a controlling federal rule. *See Nobelman v. Am. Sav. Bank*, —— U.S. ——, ——, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993). The decision as to whether or not to oppose a motion for relief from stay, a decision Betsos made in this case, of necessity requires an attorney to make judgments as to the extent, validity and priority of the creditor's lien, which generally implicate state law. Betsos also considered other areas of state law, i.e. the duties of a state court receiver. Further, he counselled his clients as to the advisability of commencing a bankruptcy case, and that advice could not be competently rendered absent familiarity with options under applicable state law, including possible defenses or counterclaims in state court foreclosure actions. *See Kennedy v. Bar Ass'n of Montgomery County, Inc., supra*, 316 Md. at 665–67, 561 A.2d at 210–11. Betsos did not consult with Connecticut-licensed counsel in rendering advice on matters of Connecticut law.

■ Under the second theory, it would be argued that since Betsos was authorized to practice law in this court, *see*

Rule 2 L.R.Bankr.P. and Rule 2(a) L.R.D.C., he was therefore authorized to practice bankruptcy law generally notwithstanding § 51–88. That argument would require me to find that there are two bases for the right to practice law in Connecticut: an attorney may be licensed by the state in accordance with its statutes and rules or, in the alternative, that person may generally practice law if he or she is authorized to practice in the United States District Court for the District of Connecticut. The flaw in that argument is that it fails to recognize the distinction between the right to practice in a court and the right to practice law *generally*. The essence of that distinction is that the general practice of law connotes the right to offer legal services to anyone who seeks them, whereas the right to practice in a court is limited to providing legal services that are incidental to a specific case or proceeding pending in that court.

■ The regulation of the right to practice law generally, unless otherwise prescribed by Congress, is traditionally left to the states. *Leis v. Flynt*, 439 U.S. 438, 442, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979) (per curiam) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."). It does not derive from a local rule which permits an attorney to practice in a court. Thus Congress could enact statutes providing for the licensing of individuals to practice in specific areas of federal law, and those statutes would preempt incompatible state laws. For example, in *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the Court struck down a state court injunction that prohibited a non-attorney from practicing patent law because a federal statute specifically authorized that practice by non-attorneys who were deemed sufficiently qualified by the Commissioner of Patents. The Court held:

A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions, or which impose

upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.

*Id.* at 385, 83 S.Ct. at 1326 (quoting *Leslie Miller, Inc. v. Arkansas,* 352 U.S. 187, 190, 77 S.Ct. 257, 258–59, 1 L.Ed.2d 231 (1956)) (footnotes omitted). The Court went on to hold that the statute in question

does not authorize the general practice of patent law, but sanctions only the performance of those services which are reasonably necessary and incident to the preparation and prosecution of patent applications.... [T]he State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives.

*Id.* at 386, 402, 83 S.Ct. at 1326, 1335 (footnote omitted).[7]

Except in a few specialized areas such as patent law, "Congress thus far has chosen to leave regulation of the federal bars to the courts." *Frazier v. Heebe,* 482 U.S. 641, 646 n. 4, 107 S.Ct. 2607, 2611 n. 4, 96 L.Ed.2d 557 (1986). The instant case turns on the scope of the authorization granted by the district court and this court under Rule 2(a) L.R.D.C. and Rule 2 L.R.Bankr.P.[8]

The contours of the so-called "federal practice exception"—pursuant to which individuals acting within the scope of an authorization to practice before a federal court are not in violation of a state statute prohibiting the unauthorized practice of law—are not sharply defined. There is, of course, no question

that the right to practice in a federal court includes the right to appear there notwithstanding state laws which regulate the practice of law. *See* Rule 9010(a)(1) Fed. R.Bankr.P.; *United States v. Peterson,* 550 F.2d 379 (7th Cir.1977). The Second Circuit's decision in *Spanos v. Skouras Theatres Corp., supra,* 364 F.2d at 161, while factually distinguishable from the instant case, provides further guidance.[9] There, an attorney licensed to practice in California and specializing in antitrust law was engaged to assist in the prosecution of a federal antitrust suit in the federal district court for the Southern District of New York over a period of several years. Although he kept his California office and practice and frequently returned there, he eventually moved to New York, but did not seek admission to the bar of that state or to the bar of the district court. When the client declined to pay him, arguing that his practice in New York was unauthorized, the district court ruled that his fee was appropriate. The Second Circuit noted that, had the district court granted the attorney leave to appear there, he would have been insulated from the state law prohibiting the unauthorized practice of law as to "any legal services reasonably incident to the activities the District Court had authorized." *Id.* at 169. After finding on other grounds that the attorney could recover his fee, the court of appeals declined to extend its holding to situations other than those in which an out-of-state attorney is invited to work with a local attorney on a federal claim or defense:

**7.** I note that, unlike the patent law license involved in *Sperry,* admission to practice in the bankruptcy court does not reflect a judgment by any federal authority that an attorney is qualified to practice bankruptcy law generally. Thus, in the instant case, there is no inconsistency between state and federal law arising out of a state's attempt to "second guess" a federal determination that an individual is qualified to engage in certain activities.

**8.** Rule 2(a) L.R.D.C. was promulgated pursuant to 28 U.S.C.A. § 2071(a) (West Supp.1993) which provides:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules *for the conduct of their business.* Such rules shall be consistent with Acts

of Congress and rules of practice and procedure prescribed under section 2072 of this title.

(emphasis added). *See also* 28 U.S.C.A. § 1654 (1966). The fact that the enabling statute contemplates that court rules will relate only to the business of the court provides further support for my conclusion *infra* that Rule 2(a) is not intended to authorize the maintenance of a general law practice in the District of Connecticut notwithstanding state laws which purport to regulate that activity.

**9.** The discussion of the privileges and immunities clause in *Spanos,* which the Supreme Court described as dictum, has been limited or rejected. *See Leis v. Flynt, supra,* 439 U.S. at 442 n. 4, 99 S.Ct. at 700 n. 4 (1979) (per curiam). That discussion is not relevant to the instant issue.

The disparity in requirements for admission to the bar gives a state maintaining high qualification standards some interest in seeing that its residents do not take action even on a federal right solely on the advice of a lawyer from another state; moreover, what is basically a federal claim or defense may depend in part on an "issue or claim which has its source in state law." *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 541 n. 1 (2 Cir. 1956).... *[W]e in no way sanction a practice whereby a lawyer not admitted to practice by a state maintains an office there and holds himself out to give advice to all comers on federal matters.*

*Id.* at 171 (emphasis added).

 Put another way, an attorney who is not licensed by the State of Connecticut but who is authorized to practice before the bankruptcy court may, notwithstanding § 51–88, practice law in this state and even maintain an office here so long as the services rendered are limited to those reasonably necessary and incident to the specific matter pending in this court. There is a difference, however, between maintaining an office in this state for the convenience of litigating a matter in this court and maintaining such an office for the purpose of giving legal advice on bankruptcy matters to all clients who seek it and accepting all cases which can be filed here. In the instant case, the evidence disclosed that Betsos held himself out to give advice to "all comers," *see Spanos, supra,* on bankruptcy matters. The fact that he utilized Glancy/NEM for most of his referrals

does not change that analysis. Whether he acted through Glancy/NEM, or through other methods of referral, he held himself out to residents of Connecticut as a bankruptcy law practitioner. Contrary to the prohibition in § 51–88(a), Betsos practiced law in Connecticut without having a license. He was not associated with any attorney licensed in this state, and he did not maintain an office in any other state. *Cf. Cowen v. Calabrese,* 230 Cal.App.2d 870, 872–73, 41 Cal.Rptr. 441, 442–43 (1964); *The Florida Bar v. Savitt,* 363 So.2d 559, 561 (Fla.1978). Moreover, as noted, he advised his clients with respect to Connecticut law.

Under the facts of this case—to which my holding is strictly limited—I conclude that Betsos engaged in the unauthorized practice of law.[10]

### B. Remedy

 "'Generally, even though duly admitted in another state, an attorney may not recover compensation for legal services unless he has been admitted to practice in the jurisdiction where the services were rendered.'" *Perlah v. S.E.I. Corp., supra,* 29 Conn.App. 43, 612 A.2d at 808 (quoting 7 Am.Jur.2d 280, Attorneys at Law § 242).[11] The relief requested in the debtors' motion was that "the $7,500 paid to Mr. Glancy ..., some of which was allegedly transferred to Peter Betsos, ... be required to be disgorged and returned to the Bankruptcy Estate...."

 The evidence is uncontroverted that Betsos received $2,756.50. In their memorandum of law, the debtors suggest that Bet-

---

10. Betsos also argues that Rule 2(c) L.R.D.C. should be read to authorize him to maintain an office in Connecticut for the practice of law. I disagree. That rule provides in relevant part:
No member of the bar of this Court who does not have an office for the transaction of business in person within the District of Connecticut ... shall appear as attorney of record in any cause without specifying on the record a member of the bar of this Court having an office within the District of Connecticut, upon whom service of all papers shall also be made.

The rule simply requires that every attorney practicing before the district court provide the court with a notice address that is in the District of Connecticut. It does not empower the attorney to practice law in the District.

11. While Betsos does not argue that he is entitled to compensation under a theory of *quantum meruit,* I note that such recovery would be inappropriate both because Betsos failed to even attempt compliance with § 327(a), *see In re Shirley, supra,* 134 B.R. at 944; *In re Grabill Corp., supra,* 113 B.R. at 972, and because Betsos was not licensed in Connecticut, *Perlah v. S.E.I. Corp., supra,* 29 Conn.App. 43, 612 A.2d at 808–09. Similarly, most courts have refused compensation as a general administrative expense under § 503(b)(1)(A) or under § 503(b)(3)(D) and (b)(4) to professionals who fail to comply with the requirements of § 327(a) and Rule 2014(a). *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 108–09 (3d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Southern*

sos and Glancy should be jointly and severally liable either because they were partners or because they were co-conspirators. *See Movant's Pretrial Memorandum in Support of Motion for Disgorgement*, January 15, 1993, pp. 6–7.[12] Even if that claim had been properly raised in the motion, which it was not, the evidence does not indicate that Betsos and Glancy had formed "an association ... to carry on as co-owners a business for profit," Conn.Gen.Stat.Ann. §§ 34–44(1) (West 1987), nor that they represented themselves to be partners, *id.*, § 34–54, 34–45(1). The fact that they may have shared gross returns does not alone establish that they were partners. *Id.*, § 34–45(3). Further, there was no evidence that Glancy entered into a combination with Betsos to commit an unlawful act or a lawful act by unlawful means. *See Benoit v. Amalgamated Local 299 United Elec. Radio and Mach. Workers of Am.*, 150 Conn. 266, 276, 188 A.2d 499 (1963). Betsos testified that, other than the bare referral and the passing along of his fees, Betsos maintained complete independence from Glancy, with Betsos rendering only legal services and Glancy rendering only financial services. The debtors did not effectively counter that testimony. I make no finding as to whether Glancy was negligent in not verifying whether Betsos was licensed to practice law in Connecticut.

I conclude that it would be anomalous to permit Betsos to retain a fee for services he was unauthorized to perform. Accordingly, his entire fee must be disgorged to the estate.[13]

### III. Glancy/NEM

■ I need not decide whether service by mail on Glancy gave this court jurisdiction over his person, *see* Rules 7005, 9014, Fed. R.Bankr.P., because, for the reasons that follow, I conclude that the evidence does not support the debtors' claims against him. The sole ground on which the debtors seek disgorgement of the fees paid to Glancy/NEM, all of which were paid prepetition,

is that Glancy is not an attorney-at-law and yet performed legal services in this case. A number of courts have held that they have the authority to determine the reasonableness of the fees of non-attorneys under § 329 and order the disgorgement of fees where the non-attorneys have rendered legal services in connection with a bankruptcy case. *See, e.g., In re Evans*, 153 B.R. 960, 966 (Bankr.E.D.Pa.1993); *In re Harris, supra*, 152 B.R. at 446; *In re Grimes*, 115 B.R. 639, 649–50 (Bankr.D.S.D.1990) (ordering disgorgement of fees paid to farm management company providing legal advice to debtor both pre- and post-petition, and which drafted a plan and disclosure statement, where employment of the company was never approved by the court); *Glad v. Mork (In re Glad)*, 98 B.R. 976, 978 (9th Cir. BAP 1989) (a non-attorney who advised the debtor regarding chapter 11 and solicited financial information for and prepared schedules rendered legal services and was required to disgorge his fees); *Fleet v. United States Consumer Council, Inc. (In re Fleet)*, 95 B.R. 319, 338 (E.D.Pa.1989).

While I find the reasoning of those cases to be sound as a general proposition, the debtors have offered no evidence that Glancy performed legal services in connection with this case. There is no evidence that Glancy acted as an "attorney" even in the broad sense of one employed by a debtor to conduct legal services in a case, *see In re Bachmann, supra*, 113 B.R. at 775. Indeed, the evidence indicates that he did not represent the debtors in this case. Betsos testified that Glancy was involved in trying to sell a note and mortgage owned by the debtors and to facilitate a sale/leaseback transaction, and that Betsos retained full control over all aspects of the bankruptcy case. Betsos further testified that Glancy's financial services could also include negotiating with creditors, arranging refinancings at lower rates, and obtaining new second mortgages; none of those services necessarily involves the unauthorized

---

*Diversified Properties, Inc.*, 110 B.R. 992, 995–96 (Bankr.N.D.Ga.1990).

**12.** The certification of service indicates that the memorandum was not served on Glancy, although an attached address list indicates that it was.

**13.** The debtors also allege that Betsos must disgorge the fees because he improperly split fees with a non-lawyer and because his fees were not reasonable. In light of my holding, I need not consider those grounds.

practice of law. *See Respondent Betsos's Exhibit 1.* The debtors offered no evidence to the contrary. Even if § 329(b) did apply, the evidence here affords me no basis for determining the value of Glancy's services. In addition, while Conn.Gen.Stat. 51–88(a)(3) prohibits one not licensed to practice law in Connecticut from making it a business to solicit employment for an attorney-at-law, I cannot find on the limited record before me that Glancy did so.

While I do not sanction the conduct of Glancy/NEM, and make no finding as to the reasonable value, if any, of his services, I conclude that the evidence does not support the entry of an order requiring Glancy/NEM to disgorge fees under authority of § 329 or because he was engaged in the unauthorized practice of law. This decision does not reach the question of whether the debtors are precluded from asserting a claim against Glancy/NEM on other grounds. *See* §§ 544, 547, 548.[14]

## ORDER

For the foregoing reasons, Betsos is ordered to disgorge fees paid to him by the debtors in the amount of $2,756.50. Those fees shall be returned to the estate, rather than to the debtors. *See* §§ 329(b)(1)(A), 541(a)(3).[15] The motion is denied as to Glancy, d/b/a NEM. IT IS SO ORDERED.

---

**14.** *I note, however, that the appropriate procedural device for such a claim, which is not against one rendering legal services in connection with a case, is an adversary proceeding, rather than a motion to disgorge. See* Rule 7001(1), Fed.R.Bankr.P.

**15.** Although several of the checks by which payment was made to Betsos were drawn on the account of Northeastern Marketing, Inc., as noted, that entity was merely a conduit for the payments which, according to Betsos's testimony, were segregated by Glancy for the specific purpose of paying an attorney to represent the debtors. Accordingly, the funds should be returned to the estate, not to Northeastern Marketing, Inc.