preservation of decorum and for the respectability of the profession." *Ex parte Burr*, 22 U.S. (9 Wheat.) 529 (1824).

In addition, if we follow Judge Boggs' reasoning for the court, licensing in federal court becomes an exclusively federal matter without giving credence or comity to the licensing requirements of the state courts. Federalism may be waning, but I am not ready to set up a national system for licensing, removing and regulating federal practice. I am not ready to say, along with my colleagues, that "'applicable law' authorizing an attorney to practice . . . consists solely of the federal rules for admission to the federal bar" without regard to "state rules for admission to the state bar." (Op. p. 4.) I would continue the longstanding practice of the federal courts in rendering comity to the state courts in regulating the practice of law. *See*, *e.g.*, *Leis v. Flynt*, 439 U.S. 438, 442 (1979)(noting that it is well established that the States, not federal courts, "prescribe the qualifications for admission to practice and the standards of professional conduct" as well as be "responsible for the discipline of lawyers"). We do not need an elaborate national agency to regulate licensing, removing and disciplining federal lawyers, and the federal courts themselves are not equipped to handle this task alone without the help of the state courts and their rules of practice. Further, if Rittenhouse can practice regularly before the Michigan bankruptcy court with a Texas law license, he has successfully circumvented the Michigan state bar exam and requirements for admission. Opening the door to such a practice places an undue burden on federal courts to regulate and discipline attorneys who are no longer under the oversight of their local state bar and additionally encourages prospective attorneys to forum shop among state bars for the easiest requirements.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0196P (6th Cir.)
File Name: 02a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

In re: ERNEST J. DESILETS,
          *Debtor.*

————————————————

ALLAN J. RITTENHOUSE,
       *Plaintiff-Appellant,*

   *v.*

DELTA HOME IMPROVEMENT, INC.,
       *Defendant-Appellee.*

No. 00-2411

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 00-00115—David W. McKeague, District Judge.

Argued: January 24, 2002

Decided and Filed: June 3, 2002

Before: MERRITT, BOGGS, and MOORE, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Allan J. Rittenhouse, Iron Mountain, Michigan, for Appellant. Victoria V. Kremski, STATE BAR OF MICHIGAN, Lansing, Michigan, for Appellee and Amicus Curiae. **ON BRIEF:** Allan J. Rittenhouse, Iron Mountain, Michigan, for Appellant. Daniel M. Morley, BUTCH, QUINN, ROSEMURGY, JARDIS, BUSH, BURKHART & PARKS, Escanaba, Michigan, for Appellee.

BOGGS, J., delivered the opinion of the court, in which MOORE, J., joined. MERRITT, J. (pp. 11-12), delivered a separate dissenting opinion.

---

**OPINION**

---

BOGGS, Circuit Judge. Allan J. Rittenhouse appeals the judgment of the district court that he is not an attorney as defined by the Bankruptcy Code, 11 U.S.C. § 101(4). Because the district court erred in its interpretation of the relevant section of the Bankruptcy Code, we reverse.

I

Allan J. Rittenhouse was counsel of record for debtor Ernest J. Desilets. During Desilets's bankruptcy proceeding, Delta Home Improvement, Inc. (Delta) moved the court to suspend Rittenhouse from practicing before the bankruptcy courts, to require him to disgorge fees, and to sanction him for the unauthorized practice of law.

Because Rittenhouse had not been authorized by the State Bar of Michigan to practice law in the State of Michigan, the bankruptcy court held that Rittenhouse was not an "attorney" within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(4). The bankruptcy court held that Rittenhouse was a

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. I did not know until I read Judge Boggs' opinion that for lawyers it is now a regular, everyday practice — part of the profession's "quotidian forms of practice" (to use the court's words) — for lawyers to practice daily in the federal courts of State A, say Michigan or Tennessee, while living and being licensed to practice only in State B, say New York or Florida. I recognize that law practice is changing. But I had thought that a lawyer still needs to pass the bar exam and be admitted to practice in the state where the lawyer routinely engages in state and federal litigation. I did not know that the routine, "quotidian" practice of law in the federal courts of a state where a lawyer is not licensed to practice is a right that may not be regulated or affected by the local rules of the federal court in which the lawyer appears.

In this case, both of the courts below, the Bankruptcy Court, an adjunct of the District Court, and the District Court itself, have interpreted their own local rules to forbid routine practice in the bankruptcy courts in Michigan by a lawyer not licensed to practice in Michigan. I see nothing in any federal statute or rule that withdraws from these courts the authority to regulate practice before them, nor do I see any reason to say that the phrase "authorized under applicable law to practice law" in § 101(4), title 11, does not include those Michigan rules of law practice recognized by the Michigan federal courts. As Chief Justice Marshall wrote for a unanimous Court in the *Burr* case, "the Court is not inclined to interpose [by reversing the lower federal court's removal of Burr from the bar], unless it were in a case where the conduct of the Circuit or District Court was irregular, or was flagrantly improper." This is because "no other tribunal can decide, in a case of removal from the bar, with the same means of information as the Court itself" and because "the power . . . is, we think, incidental to all Courts, and is necessary for the

equally extend to lawyers working for large New York firms, who happened to do most of their legal work in Michigan for Michigan (or multistate, or multinational) clients. We do not believe that the Western District of Michigan Local Rules and 11 U.S.C. § 101(4) can be read to prohibit Rittenhouse's practice, while permitting these other quotidian forms of practice.

Because Rittenhouse was properly admitted to the federal bar under the applicable rule, and because federal standards govern practice before the federal bar, we reject the bankruptcy court's determination as adopted by the district court.

## III

For the foregoing reasons, the district court's judgment is REVERSED.

---

represent clients before the Western District of Michigan is that the state rules allow them to, on a *pro hac vice* basis. This is a circular argument: that Michigan chooses not to exclude all out-of-state attorneys from federal court is better evidence for the proposition that it lacks the power to do so, rather than the proposition that it may do so but has simply exercised extraordinary restraint up until now.

"bankruptcy preparer" under 11 U.S.C. § 110(a), and because he had failed to comply with several requirements imposed by the Code on bankruptcy preparers, ordered him to pay a $3500 fine and disgorge fees of $872.

A brief factual synopsis is useful. Rittenhouse graduated from the South Texas College of Law, and was admitted to practice law in Texas in 1992. In December 1992, he moved to Wisconsin. His applications for admission to the Wisconsin and Michigan bars were denied. In February 1994, Rittenhouse applied for admission to the bar of the United States District Court for the Western District of Michigan, and was admitted. Rittenhouse has an office in his home in Wisconsin. He also has an office in Iron Mountain, Michigan. His practice was limited to bankruptcy matters in federal court.

In July 1995, the State Bar of Michigan informed Rittenhouse by letter that his conduct constituted the unauthorized practice of law. Rittenhouse responded to the letter and argued that a practice limited to federal bankruptcy did not constitute the unauthorized practice of law. The Michigan Bar took no further action until December 9, 1999, when it instituted a suit in state court to enjoin Rittenhouse from unauthorized practice. This state court action was terminated on August 18, 2000, by the issuance of a stipulated injunction prohibiting Rittenhouse from engaging in conduct deemed to be the unauthorized practice of law.

The bankruptcy court fined Rittenhouse and required him to return fees for engaging in the unauthorized practice of law, while referring the matter of his suspension for *en banc* consideration by the bankruptcy court. *En banc* review resulted in an order indefinitely suspending Rittenhouse from appearing before the bankruptcy court.

Rittenhouse appealed to the district court, which affirmed the bankruptcy court determination. Rittenhouse now timely appeals the district court's decision.

II

Rittenhouse does not dispute any of the facts established by the bankruptcy or district courts. We determine the remaining statutory questions *de novo*. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997).

All parties agree that Rittenhouse was eligible for admission to the bar of the Western District of Michigan, and was properly admitted pursuant to Local Rule (W.D. Mich.) 83.1, which reads in pertinent part:

> *Eligibility* - A person who is duly admitted to practice in a court of record of a state, and who is in active status and in good standing, may apply for admission to the bar of this Court . . . .

Local Rule (W.D. Mich.) 83.1(c)(i). We look to 11 U.S.C. § 101(4) for the definition of "attorney" for purposes of the bankruptcy code:

> 'attorney' means attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law;

The central issue of the case is, therefore, whether the "applicable law" authorizing an attorney to practice before the bankruptcy court consists solely of the federal rules for admission to the federal bar, or also includes the state rules for admission to the state bar, even when not referenced in the federal rules.

This question has not been resolved by our Circuit. We turn therefore to persuasive authority. In *In re Poole*, 222 F.3d 618 (9th Cir. 2000), the Ninth Circuit determined that federal standards control admission to the federal bar. *Poole* concerned an attorney admitted to the Illinois State Bar, and admitted to practice in the Arizona federal courts. The trustee in a bankruptcy proceeding moved to require the attorney to disgorge his fees because he was not an "attorney" under 11

This statement authorizes activities beyond those involved in appearance before the bankruptcy court. In particular, the rule authorizes the attorney to "counsel a client in the action or proceeding for compensation." This is what Rittenhouse did, and what the courts below determined he was not allowed to do, based on their reading of state law. When state licensing laws purport to prohibit lawyers from doing that which federal law expressly entitles them to do, the state law must give way. *Sperry*, 373 U.S. at 385.

Second, Rittenhouse does have a valid state source of the authority to practice law: he is properly licensed by Texas. There is no slip 'twixt the cup and the lip; Rittenhouse is admitted to the practice of law in Texas, and the local rule requires only that an attorney be duly admitted to practice in a court of record of a state in order to practice before the Western District of Michigan.

The bankruptcy court, district court, and the Michigan Bar seem in fact to be exercised on practical, not legal, grounds. They have noticed that Rittenhouse has an office and practices federal bankruptcy law in a state in which he is not licensed to practice law generally; presumably he competes for federal bankruptcy business with properly licensed Michigan lawyers. However, this was also the motivating force behind the controversy in *Sperry*, where the Florida Bar sought to prevent attorneys not licensed by Florida from practicing patent law in Florida.

The bankruptcy court's analysis also suffers from a practical failing; it did not realistically distinguish between Rittenhouse and those attorneys who have their offices across the border, but do all of their work before the Michigan federal courts.[2] The bankruptcy court's analysis would

---

[2]In fact, Rittenhouse does have an office in his home in Wisconsin, and has undertaken to rent office space in Texas in response to the court's rulings below. The argument that would be advanced to distinguish Rittenhouse from out-of-state attorneys who regularly take cases in Michigan is presumably that the reason out-of-state attorneys may

courts may prescribe rules for the conduct of their business. It is clear from 28 U.S.C. § 1654 that the authority provided in § 2071 includes the authority of a district court to regulate the membership of its bar." *Frazier v. Heebe*, 482 U.S. 641 (1987) (Rehnquist, dissenting). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (accord). The power to admit and regulate attorneys is not, as the *Peterson* court asserts, the sole bailiwick of the states. Since both the federal courts and state bars have the ability to regulate attorneys, the question becomes which has the greater power to regulate admission to the federal bar. The bankruptcy judge, below, answered this question succinctly: "if this court is unable to reconcile Michigan's laws governing the practice of law with the federal court rules relating to the subject, the State's rules must yield." *In re Desilets,* 247 B.R. 660, 668 (Bankr. W.D. Mich. 2000).

The bankruptcy court in the instant case determined that the applicable state and federal rules are compatible. The bankruptcy court argued that the sole power granted by the federal rules was the ability to practice in federal court; the grant, the court argued, was not of a general power to practice law. *Desilets*, 247 B.R. at 669-70. Since the bankruptcy court interpreted the local federal rules only to authorize practice in the court, and not the practice of law, the court found no conflict between state and federal rules.

We disagree, on two grounds. First, this argument is incorrect on the face of the federal rule. Local Rule (W.D. Mich.) 83.1(a)(iii) defines the phrase "practice in this Court" to mean:

in connection with an action or proceeding pending in this Court, to appear in, commence, conduct, prosecute the action or proceeding; appear in open court; sign a paper; participate in a pretrial conference; represent a client at a deposition; counsel a client in the action or proceeding for compensation; or otherwise practice in this Court or before an officer of this Court.

U.S.C. § 101(4). The Ninth Circuit rejected this argument. In so doing, the court noted:

Admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges. The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included . . . . In short, a federal court has the power to control admission to its bar and to discipline attorneys who appear before it.

*Poole*, 222 F.3d at 620 (citations and quotations omitted).

The plaintiff in *Poole* argued, as does Delta here, that a lawyer not admitted in the forum state is not an "attorney" as defined in 11 U.S.C. § 101(4). The *Poole* plaintiff argued that the "applicable law" was Arizona law, and that under Arizona law, the defendant attorney could not practice law, including practice before a federal court.

The *Poole* court found that the states did not have the power to determine who could be admitted to the federal bar. The court stated:

As we have discussed, and as nearly a century of Supreme Court precedent makes clear, practice before federal courts is not governed by state court rules. Further, and more importantly, suspension from federal practice is not dictated by state rules.

*Poole*, 222 F.3d at 622. *See also Chambers v. NASCO Inc.*, 501 U.S. 32, 43 (1991) ("a federal court has the power to control admission to its bar"); *Theard v. United States*, 354 U.S. 278 (1957) (disbarment by federal courts does not necessarily flow from disbarment by state courts); *In re Ruffalo*, 390 U.S. 544 (1968) (accord). Since the state and federal systems are separate and independent, the court held that the "applicable law" to which 11 U.S.C. § 101(4) refers was federal rather than Arizona law.

Further, in *Sperry v. Florida ex rel. the Florida Bar*, 373 U.S. 379, 385 (1963), the United States Supreme Court held that the State of Florida could not apply its licensing provisions to the defendant attorney to prevent him from preparing patent applications, because he was registered to practice before the United States Patent Office. The district court in the instant case cited *Sperry* as holding that when federal and state law do not directly conflict, state law need not give way. This misstates the holding of *Sperry*. There, the Court held that when a state licensing law excludes a lawyer from practice that federal rules expressly allow, the two rules *do* conflict, and the state law must give way. *Sperry*, 373 U.S. at 385.

*Sperry* provides strong guidance for the current case. The *Sperry* Court noted:

> A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give the State's licensing board [in *Sperry*, the Florida Bar Association] a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.

*Ibid.* (citations and quotations omitted). The only plausible distinction between *Sperry* and *Poole* is that the enabling Congressional statute in *Sperry* expressly allowed for the prosecution of patents by non-lawyers.[1] This is a distinction

---

[1] The court in *In re Peterson*, 163 B.R. 665 (Bankr. D. Conn. 1994) attempted to distinguish *Sperry* by arguing that patent practice cases were different than bankruptcy practice cases, because the federal government enacted a specific statute that gave the power to practice law to patent attorneys. In both cases, Congress has confided the ability to control a federal bar to a federal entity. Although it seems clear, we need not go so far as to hold that the statutes granting federal courts the ability to regulate their bars would allow federal courts to admit practitioners unlicensed by any state. A state (Texas) has licensed Rittenhouse to practice law.

without a difference, given that Rittenhouse is a duly licensed lawyer who meets the requirements for admission to the Bar of the Western District of Michigan.

There is countervailing persuasive authority. The bankruptcy court and district court relied primarily on a Connecticut bankruptcy court decision, *In re Peterson*, 163 B.R. 665 (Bankr. D. Conn. 1994). In *Peterson*, the court determined that an attorney was engaged in the unauthorized practice of law because he maintained an extensive federal bankruptcy practice in Connecticut, while being licensed in New York. The *Peterson* court held that when the attorney maintained an office and conducted significant business in Connecticut, he violated Connecticut state rules prohibiting the unauthorized practice of law.

In response to the argument that the attorney was allowed to practice law before the federal courts because he was admitted to the federal bar, the *Peterson* court held that there was a difference between the right to practice law, and the right to practice before a court. *Peterson*, 163 B.R. at 673. The court cited *Leis v. Flynt*, 439 U.S. 438 (1979), as holding that the licensing and regulation of lawyers is generally left to the states. The *Peterson* court reasoned that since state law was the source of the ability to practice law, federal law did not, alone, grant that ability. Thus, the court held, state law governed who was allowed to practice law in federal courts. *Peterson*, 163 B.R. at 673.

The persuasive weight of *Peterson* is dependant on the soundness of its reading of *Leis*. In *Leis*, the Supreme Court held that state rules governed practice in *state* courts. *Leis*, 439 U.S. at 441-42. *Leis* does not hold that state rules govern practice in *federal* courts. Although federal courts often reference state rules in their requirements (as did the rule at issue here—an applicant must be properly licensed by a state to be admitted), they need not do so.

Contrary to *Peterson's* reading of *Leis*, federal courts have the right to control the membership of the federal bar. "Congress has provided in 28 U.S.C. § 2071 that the district