**In Re: Ernest J. DESILETS, Debtor.**

No. 99–90364.

United States Bankruptcy Court,
W.D. Michigan,
Northern Division.

April 17, 2000.

Daniel M. Morley, Escanaba, Michigan, for creditor Delta Home Improvement, Inc.

Vincent R. Petrucelli, Iron River, Michigan, for Allan J. Rittenhouse.

Thomas K. Byerley, Lansing, Michigan, for State Bar of Michigan, amicus curiae.

## OPINION REGARDING UNAUTHORIZED PRACTICE OF LAW, STATUS AS A BANKRUPTCY PETITION PREPARER AND APPROPRIATE RELIEF

JAMES D. GREGG, Chief Judge.

### I. ISSUES

The principal issue in this proceeding is whether Allan J. Rittenhouse ("Rittenhouse"), a lawyer licensed to practice law by the State of Texas, but not so licensed by the State of Michigan, is authorized to practice bankruptcy law in Michigan solely by virtue of his admission to practice before the United States District Court for the Western District of Michigan and this bankruptcy court. Other issues include discerning the applicable law, determining whether Rittenhouse is a "bankruptcy petition preparer," and, to the extent necessary, granting appropriate relief.

### II. JURISDICTION AND STANDING

This matter is before the court on the motion of creditor Delta Home Improvement, Inc. ("Delta") for an order suspending Rittenhouse, the debtor's counsel, from practicing before this court until he is licensed by the State of Michigan to practice law, and for other related relief. Rittenhouse opposes the motion. The court held a hearing on March 10, 2000. The following constitutes the court's findings of fact and conclusions of law in accordance with FED. R. BANKR. P. 7052 and 9014.

Because the matter arises under title 11, United States Code,[1] and arises in a case under title 11, the court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). In addition, many issues to be decided are clearly related to a case under title 11. For example, the suspension of Rittenhouse would affect Mr. Desilets's "rights, liabilities, options, or freedom of action," by depriving him of his chosen counsel. *Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1142 (6th Cir.1991) (*quoting Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). Moreover, requiring Rittenhouse to return fees would similarly affect the estate or the debtor. And, more generally, the court has the inherent authority to regulate those admitted to practice before it. *Robiner v. Home Owners Rescue Serv. (In re Webb),* 227 B.R. 494 (Bankr. S.D.Ohio 1998); *In re Ludwick,* 185 B.R. 238, 246 (Bankr.W.D.Mich.1995). The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *In re Webb,* 227 B.R. at 497–99 (claims relating to section 110 and the unauthorized practice of law are core proceedings); *In re Ludwick,* 185 B.R. at 239.

The court also finds that Delta has standing to bring this proceeding,[2] and that, contrary to Rittenhouse's argument, the dispute is justiciable. *See In re Calvo,*

---

1. The Bankruptcy Code ("Code") is set forth in 11 U.S.C. §§ 101–1330. Unless stated to the contrary, all future statutory references are to the Code.

2. Because Delta, has a creditor who as filed a proof of claim, makes a colorable request for disgorgement of fees (a request which, if granted, would augment the estate), it has a pecuniary interest in the controversy. *Cf.* 11 U.S.C. § 329. Moreover, as a matter of statute, to the extent that Delta seeks relief under section 110, Congress has conferred standing upon creditors. *See* 11 U.S.C. § 110(h)(3), (i)(1), (j)(1) (authorizing creditors to request relief regarding bankruptcy petition preparers); *see also Servidone Constr. Corp. v. St. Paul Fire & Marine Ins. Co.,* 911 F.Supp. 560, 563–64 (N.D.N.Y.1995) (member of public has standing to enforce unauthorized practice statute).

88 F.3d 962, 965–66 (11th Cir.1996) (bar disciplinary action is justiciable).

## III. PROCEDURAL BACKGROUND

On October 13, 1999, Delta filed its Motion for Order Suspending Debtor's Counsel from Practicing Before the U.S. Bankruptcy Court for the Western District of Michigan ("Motion"). On October 21, 1999, Rittenhouse filed a brief opposing the Motion. Delta filed a supplemental brief in further support of the Motion, and in response to Rittenhouse's opposing brief. On December 6, 1999, the State Bar of Michigan ("State Bar" or *"amicus curiae"*) filed its Motion by the State Bar of Michigan for an Order Allowing It To File an Amicus Brief and Dispensing With a Hearing on This Motion. That motion was granted by the court in an order dated December 16, 1999. In an order dated December 30, 1999, the court scheduled a hearing and directed the parties and *amicus curiae* to .be prepared to present evidence and argument on specified issues which, in the court's opinion, were raised in the Motion.[3] The December 30, 1999 Order Regarding Suspension Motion further directed the parties to file and exchange witness lists and exhibits, in accordance with the court's usual practice in advance of contested evidentiary hearings. Apparently to conform its Motion to the issues enumerated in the Order Regarding Suspension Motion, on January 11, 2000, Delta filed its Amended Motion for Order: (1) Disbarring Debtor's Counsel from Practicing Before the U.S. Bankruptcy Court for the Western District of Michigan Pursuant to LBR 2093; and (2) For Injunctive Relief, Sanctions, and Attorneys

Fees Pursuant to 11 U.S.C. § 110.[4] After adjourning the hearing on the Motion, originally scheduled for January 25, 2000, the court heard opening arguments and took testimony and other evidence on March 10, 2000, in Marquette, Michigan. At the conclusion of the hearing, the court advised the parties and *amicus curiae* that they could submit closing arguments in writing. The parties and the State Bar have done so.

■ Procedurally, the court notes that Delta commenced this matter by motion, rather than by filing an adversary complaint. Rittenhouse has not objected to the form of the proceeding. Given the procedural protections afforded by FED. R. BANKR. P. 9014 and by the court's Order Regarding Suspension Motion, and because the primary relief sought (disbarment) is not enumerated within FED. R. BANKR. P. 7001, there is no reason for him to object. Moreover, absent demonstrable prejudice, any error in conducting a contested matter rather than an adversary proceeding is harmless and therefore disregarded. *See Tully Constr. Co. v. Cannonsburg Environmental Assoc., Ltd. (In re Cannonsburg Environmental Assoc., Ltd.),* 72 F.3d 1260, 1264–65 (6th Cir.1996); *In re Command Serv. Corp.,* 102 B.R. 905, 908–09 (Bankr.N.D.N.Y.1989); FED. R. BANKR. P. 9005 (harmless errors shall be disregarded).

## IV. FINDINGS

### A. *Credibility*

At the hearing on March 10, 2000, four witnesses testified fully and candidly. The court credits the testimony of each.[5]

---

**3.** The Order Regarding Suspension Motion permitted the State Bar to participate in these proceedings as a litigating *amicus. See Russell v. Board of Plumbing Examiners,* 74 F.Supp.2d 349, 351 (S.D.N.Y.1999) (court has discretion to permit *amicus curiae* to call and cross-examine witnesses); *United States v. State of Michigan,* 116 F.R.D. 655, 661 (W.D.Mich.1987) (Enslen, J.) (trial court has inherent authority to appoint litigating *amicus curiae* to assist it in a proceeding). At no

time has Rittenhouse objected to the State Bar's involvement in this matter.

**4.** For convenience, references in this opinion to "the Motion" shall include Delta's amended motion filed on January 11, 2000.

**5.** The witnesses were Rittenhouse, Ernest Desilets (the debtor in this bankruptcy case), Louis A. Lampi (a debtor in another case who was previously represented by Rittenhouse), and Meredith Hungate (who received obnoxious demand letters, *see* Pl. Exh. 5, from Rit-

## B. *Findings of Fact*

After attending law school for three years in Texas, Rittenhouse received a Juris Doctor degree in 1992 from the South Texas College of Law, an institution now associated with Texas A & M University. *See* Transcript of Hearing on Motion for Order Requesting Suspension of Debtor's Counsel from Practicing Before the U.S. Bankruptcy Court for the Western District of Michigan (hereinafter "Tr. at") at 23, 95. That same year, he was licensed by the State of Texas to practice law. Tr. at 53–54, 97; Def. Exh. G.

In approximately December, 1992, after briefly practicing law in Amarillo, Texas, Rittenhouse moved to Wisconsin, near the Michigan–Wisconsin border and close to Michigan's upper peninsula. Tr. at 97–99. Initially, he associated himself with an attorney licensed to practice law in Michigan, and applied for admission to the Wisconsin and Michigan bars. Tr. at 23–24, 102. In 1994, when it became clear to him that he would not be licensed as an attorney by Michigan or Wisconsin, he petitioned for admission to practice before the United States District Court for the Western District of Michigan. Rittenhouse was admitted to practice before that court on February 22, 1994. Tr. at 99–101; Def. Exh. A. He was also admitted to practice before the United States District Court for the Eastern District of Wisconsin that same day. *See* Def. Exh. C. Although Rittenhouse represented several plaintiffs in civil actions in these federal district courts, since approximately 1995 his practice has generally been limited to bankruptcy matters primarily for citizens of Michigan. Tr. at 26–27,101–02, 112–13. Since approximately 1995, he has not appeared in Michigan's state courts. Tr. at 103. Without doubt, Rittenhouse is not licensed by the State of Michigan to practice law, nor has he ever been so licensed. *See* Tr. at 99; State Bar Exh. 8.

In 1995, the State Bar advised Rittenhouse that his admission to practice before the federal court did not authorize him to hold himself out as an attorney in Michigan. *See* Def. Exh. H; Tr. at 29, 104, 106–07. In response, Rittenhouse signed a few bankruptcy petitions as a "bankruptcy petition preparer" rather than as an attorney. Tr. at 29, 31. He also sent a letter to the State Bar explaining his position with respect to his asserted authority to practice bankruptcy law in Michigan. *See* Def. Exh. I; Tr. at 106–08.[6] He heard nothing further from the State Bar until sometime in 1999 or 2000, when the State Bar filed an action in state court seeking to enjoin Rittenhouse, presumably from engaging in the unauthorized practice of law. Tr. at 108.

Since 1996, Rittenhouse has maintained an office in Iron Mountain, Michigan, where he meets with the vast majority of his clients. Tr. at 16, 26, 47, 60, 82. He identifies his office with several signs indicating that he is an "attorney at law" providing "Bankruptcy & Legal Counseling Service." *See* Tr. at 17–18; State Bar Exh. 3A & 3B. Sometime after Delta filed this Motion, Rittenhouse modified the signs at his Iron Mountain office by adding "a little sign on top" that reads "FEDERAL PRACTICE ONLY." Tr. at 18; Pl. Exh. 10. Also after the filing of this Motion, Rittenhouse took steps to open an office in Appleton, Wisconsin, and to obtain shared office space in San Antonio, Texas. Tr. at 17. While testifying at the March 10 hearing, Rittenhouse revealed his intention to serve Michigan clients from his new office in San Antonio. Tr. at 118.

Rittenhouse advertises his bankruptcy practice in the yellow pages serving several upper peninsula communities. Tr. at 19–22; Pl. Exhs. 1 & 2. The yellow page listings identify Rittenhouse as "ATTY"

---

tenhouse which were not in connection with any pending bankruptcy case).

**6.** With the exception of the few cases in 1995 that he filed as a bankruptcy petition preparer, Rittenhouse has not identified himself as a bankruptcy petition preparer on any pleadings or documents filed with this court.

under the heading "Attorneys." Rittenhouse's display advertisements, also under the heading for "Attorneys," do not expressly identify him as an attorney, but they do indicate that he is "[l]icensed in the United States Supreme Court, Western District of Michigan, Eastern District of Wisconsin, Sixth and Seventh Circuit Court of Appeals, and State of Texas." On his business cards, letterhead, and other stationery, Rittenhouse identifies himself as an "attorney at law" and, as with the display advertisements in the yellow pages, lists the courts in which he is admitted to practice. *See* State Bar Exhs. 5 & 6; Tr. at 44, 46–47. These items nowhere indicate that Rittenhouse is *not licensed* to practice law in Michigan by the State Bar, Michigan's courts, or other agencies.

In 1998 and 1999, Rittenhouse filed approximately 300 and 400 bankruptcy petitions, respectively, as an attorney on behalf of Michigan debtors, from his office in Iron Mountain. Tr. at 26–27. Rittenhouse interviewed these clients and transcribed their personal information into the appropriate forms, making modifications where necessary (Tr. at 55–56); filed petitions and related schedules with this court (Tr. at 27, 56); collected fees for his services (Tr. at 39), including $72 from the debtor in this case and $800 from Louis Lampi, as well as filing fees for both men (Pl. Exh. 6 & 7; Tr. at 37–39, 63, 67–68). He has advised his clients with respect to bankruptcy remedies and terms—although not with respect to available state law alternatives to bankruptcy (Tr. at 56, 122–23); and advised them with respect to the Michigan and federal exemptions (Tr. at 27). He has also advised them with respect to a variety of state law issues, including the validity and priority of security interests in personal property and the priority of mortgages (Tr. at 56–57). In the present case, he conducted an analysis of the Michigan Building Contract Fund Act (commonly referred to as the "Michigan Builders Trust Fund Act")[7] and *likely* advised his client regarding the same in the context of a nondischargeability proceeding pending in this court. *See* Tr. at 28, 81 (assertion of attorney-client privilege prevented client from answering); *Alofs Mfg. Co. v. Toyota Mfg., Kentucky, Inc. (In re Alofs Mfg., Inc.)*, 209 B.R. 83, 96 (Bankr. W.D.Mich.1997) (court may take judicial notice of its own files); Fed. R. Evid. 201. In the bankruptcy case involving Louis Lampi, Rittenhouse prepared the petition and schedules for Mr. Lampi, but did not provide a copy to him. Tr. at 62; Pl. Exh. 6.

Rittenhouse has appeared on behalf of his clients in open court (Tr. at 27,32), at the first meetings of their creditors held pursuant to 11 U.S.C. § 341 (Tr. at 27, 32), and at examinations held pursuant to Fed. R. Bankr. P. 2004 (Tr. at 32). Rittenhouse's "bankruptcy practice" was evidently not limited to representing debtors. The record reveals that he threatened to commence an involuntary bankruptcy proceeding against Meredith Hungate in an effort to collect a putative debt on behalf of his client Marcell Concrete. Tr. at 88–90; Pl. Exh. 5.

When meeting with clients, Mr. Rittenhouse would "typically" explain that he is "a federal bankruptcy practice petitioner [sic] only," and that it was his "general practice" to tell his clients that he was "a bankruptcy attorney, and that [he] did a federal practice and [he] didn't do state court." Tr. at 57, 104. He further testified that he would point to the certificates of admission on the wall in his office and say "this is where I am licensed." Tr. at 103, 104. Mr. Desilets confirmed that Rittenhouse gave these disclaimers in his case. Indeed, Mr. Desilets testified that "I saw where [Rittenhouse] had a certificate for the Western District of Michigan" and "[t]hat was good enough for me." Tr. at 83. Louis Lampi, a former client who testified, stated that Rittenhouse did not explain his professional licensing status to him. *Compare* Tr. at 76 & 83 *with* Tr. at 64. Reiterating, the court credits the testimony of these witnesses.

---

7. Mich. Comp. Laws Ann. § 570.151 *et seq.*

## V. DISCUSSION

The facts having been found, the court must decide whether Rittenhouse is an "attorney" within the meaning of the Code, and whether his conduct amounts to the unauthorized practice of law.

### A. *Purpose of Unauthorized Practice Prohibition*

■ The Supreme Court of Michigan has explained that, since the time of Edward I of England, courts have regulated the practice of law. "[T]he first 'attorneys' were personal agents, often lacking any professional training, who were appointed by those litigants who had secured royal permission to carry on their affairs through a representative, rather than personally." *State Bar of Michigan v. Cramer,* 399 Mich. 116, 130, 249 N.W.2d 1, 6 (1976). The specialized "practice of law" grew out of the English creation in 1178 of a central court. As Michigan's highest court explains, "[b]y 1292, Edward I was forced to limit the number of practitioners due to the increasing number of unskilled persons practicing around the king's courts." *Id.* Accordingly, the English Court of Common Pleas was "vested with the power to appoint attorneys and limit the practice of law to such persons," essentially as a means of protecting the public from unskilled and unregulated practitioners. *Id.*

This "purpose of public protection" still justifies the regulation of those who practice law in Michigan, and throughout the rest of the country. *Id.,* 399 Mich. at 134, 249 N.W.2d at 7. It also buttresses the court's analysis in this particular matter.

### B. *Definition of Attorney*

Under the Code, the word "attorney" is a term of art which means "attorney, professional law association, corporation, or partnership, authorized under *applicable law* to practice law." 11 U.S.C. § 101(4)

(emphasis added). This definition, although somewhat circular, directs the court to focus upon what law is "applicable" with respect to "the practice of law." Keeping in mind the "purpose of public protection," *Cramer,* 399 Mich. at 134, 249 N.W.2d at 7, several sources of law shall be considered.

### 1. *Discerning the Applicable Law*

■ The first and most obvious choice of applicable law is state law. The United States Supreme Court has recognized the important role that the States have historically played in regulating the practice of law:

> Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers.

*Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979). It is reasonable to assume that, in enacting the definition of "attorney," Congress was well aware of this historical fact, and thus, that Congress had the respective state laws in mind. Finding no indication in the definition of "attorney" that Congress intended to displace the States' traditional regulation of the practice of law, the court must construe the Code to "adopt, rather than displace, pre-existing state law." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 544, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994).

In Michigan the practice of law is regulated by statute, and by the rules of the Supreme Court of Michigan. *See Cramer,* 399 Mich. at 134, 249 N.W.2d at 7; Mich. Comp. Laws. Ann. § 600.901 *et seq.* Because the conduct at issue on this Motion took place in Michigan, Michigan law is "applicable." [8]

**8.** Although Rittenhouse implicitly suggests that Texas law is applicable, as between Texas and Michigan, Michigan has a stronger interest in regulating Rittenhouse's *Michigan* con- duct because the conduct directly and substantially affects Michigan residents. It is nonsensical to give Texas law extraterritorial effect in this case.

Congress, however, must also be presumed to know of the longstanding rule that, although the States have historically regulated the practice of law, a federal court, too, "has the power to control admission to its bar and to discipline attorneys who appear before it," a power long-recognized as "incidental to all Courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (*citing Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824)). Thus, the phrase "applicable law" as used in section 101(4) of the Code certainly includes state law governing *the practice of law generally,* and arguably includes federal court rules governing *the admission to practice before a particular court.* Therefore, a court's inquiry is twofold: is the person authorized to practice law and, if so, is that person permitted to appear in the court.

Rittenhouse argues that the local rules of the district and bankruptcy courts not only authorize him to practice bankruptcy law, but also preempt Michigan law on the subject. The drafters of the Michigan Rules of Professional Conduct ("MRPC") recognized the very problem that Rittenhouse's argument now poses: "the general authority of the states to regulate the practice of law must be reconciled with such authority as federal tribunals may have to regulate practice before them." Comment to MRPC 8.5.

If this court is unable to reconcile Michigan's laws governing the practice of law with the federal court rules relating to the subject, the State's rules must yield. *See Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 385, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963). On the other hand, if this court can reconcile its own rules regulating attorneys with Michigan's laws, each body of law may coexist, and remain authoritative, within its own realm. As explained below, a careful reading of the local rules of the United States District Court and the United States Bankruptcy Court for the Western District of Michigan, framed by an historical perspective and with an eye on the public welfare, readily dictates such a reconciliation.

### 2. Scope of the Local Rules of the Western District of Michigan

#### a. Construing Local Rules

In addition to reconciling the local rules with Michigan law, the court must harmonize the local rules with other sources of federal law. Indeed, when interpreting the local rules, such as Local Rule (W.D.Mich.) 83.1 [9] or Local Rule (Bankr. W.D.Mich.) 2091,[10] the court is expressly constrained by the language in the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, *i.e.,* local rules of practice shall be "consistent with—but not duplicative of—Acts of Congress and these rules...." FED. R. BANKR. P. 9029(a).[11] This court is cognizant of the

**9.** Under Local Rule (W.D.Mich.) 83.1, a person is eligible for admission to the district court's bar if he or she is "duly admitted to practice in a court of record of a state" and is "in active status and in good standing...." Local Rule (W.D.Mich.) 83.1(c)(i). The rule also provides that "[a] person must be a member in good standing of the bar of this Court to practice in this Court or to hold himself or herself out as being authorized to practice in this Court...." Local Rule (W.D.Mich.) 83.1(i). The phrase "Practice in this Court" is defined to mean:

in connection with an action or proceeding pending in this Court, to appear in, commence, conduct, prosecute, or defend the action or proceeding; appear in open court; sign a paper; participate in a pre-trial conference; represent a client at a

deposition; counsel a client in the action or proceeding for compensation; or otherwise practice in this Court or before an officer of this Court.

*Id.* 83.1(a)(iii). There is no language in the district court's local rule that either defines "attorney" or purports to authorize the practice of law generally.

**10.** The local bankruptcy rule governing admission to practice provides, in relevant part, that "[m]embership in the bar of the United States District Court for the Western District of Michigan is required for practice before this Court...." Local Rule (Bankr. W.D.Mich.) 2091(a).

**11.** The district court has authorized the bankruptcy judges within this district to establish

limitation imposed by Congress with respect to the Federal Rules of Bankruptcy Procedure, namely that those Rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. Presuming, therefore, that the local rules are consistent with the national rules, and that the national rules are consistent with the Acts of Congress, the court must endeavor to harmonize them, in this particular case, with respect to the definition and treatment of attorneys. *See In re Zimmerman*, 156 B.R. 192, 196 (Bankr.W.D.Mich. 1993) (*en banc*) ("there is a strong presumption that the rules correctly reflect the dichotomy between substantive law and procedural law"). In addition, the court must construe the rules in a manner that does not enlarge any substantive right. Therefore, insofar as the local rules regulate bankruptcy practitioners, the meaning of the word "attorney" must be consistent with section 101(4) of the Code *and* with the governing federal rule, *i.e.* FED. R. BANKR. P. 9010(a).[12]

### b. *Effect of Admission to the District Court Under Local Rules*

■ An attorney who desires to practice before the United States Bankruptcy Court for the Western District of Michigan is required to be a member of the bar of the United States District Court for this district. *See* Local Rule (Bankr. W.D.Mich.) 2091(a). Although the local bankruptcy rule may be less than clear on the point, this court's custom has been to treat lawyers admitted in the district court as, by virtue of that admission, admitted to practice before the bankruptcy court, unless and until suspended or disbarred either by the district court or the bankrupt-

cy court. *See* Local Rule (Bankr. W.D.Mich.) 2093; *In re Ludwick*, 185 B.R. 238, 245–47 (Bankr.W.D.Mich.1995).

■ The district court's local rule governing admission to practice before that court is incorporated by reference into the local rules of the bankruptcy court. *See* Local Rule (Bankr.W.D.Mich.) 2091. In general, the district court's rule provides that "a person must be a member in good standing of the bar of this Court *to practice in this Court* or to hold himself or herself out as being authorized to *practice in this Court.*" Local Rule (W.D.Mich.) 83.1(i)(i) (emphasis added). A person is eligible for admission if he or she is admitted to practice in a court of record of any state. *See* Local Rule (W.D.Mich.) 83.1(c)(i).[13] In other words, a person need not be admitted to practice in the courts of Michigan in order to be eligible for admission and to practice before the district court.

■ The phrase "practice in this Court," and the district court's definition of that phrase, both suggest that members of the federal bar have a *limited* grant of authority to practice. The phrase "practice in this Court" refers only to conduct that takes place "in" or "before" or otherwise "in connection with an action or proceeding pending in this Court ...." *See* Local Rule (W.D.Mich.) 83.1(a)(iii); *see also* Local Rule (Bankr.W.D.Mich.) 2091(a) (referring to "practice *before this Court* "). The district court's local rule does *not* use a phrase such as "practice law," which connotes a much broader grant of authority and a wider range of implications.

local rules of practice and procedure. *See* Local Rule (W.D.Mich.) 83.2(d).

**12.** FED. R. BANKR. P. 9010(a) provides as follows:

A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the Code and act either in the entity's own behalf or by an attorney authorized to practice in the

court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.
FED. R. BANKR. P. 9010(a).

**13.** Local Rule (W.D.Mich.) 83.1 does not differ materially from the local rule in effect in 1994 when Rittenhouse was admitted to the district court. *Compare* Local Rule (W.D.Mich.) 83.1 *with* Local Rule (W.D.Mich.) 16 (superseded 1998).

Moreover, the local rules lack any independent, pre-admission mechanism for determining competence or character and fitness to practice law. This omission further supports a construction of the local rule that draws a distinction between practicing before the particular tribunal, and practicing law generally. Because the state courts have historically regulated the practice of law generally, the local rule does not concern itself with this important police power function that protects the public interest. In fact, the district court's local rule expressly recognizes the State Bar's authority to regulate the general practice of law, and subjects members of the federal court bar to the Rules of Professional Conduct as adopted in Michigan. *See* Local Rule (W.D.Mich.) 83.1(j). Thus, this court easily interprets the local rule as making a necessary distinction between "practicing in" or "appearing before" the federal courts, and practicing law generally within Michigan. The federal local rules regulate the former, but historically relinquish the latter to the State Bar.

Other courts have construed federal trial court rules governing bar membership as making a distinction between practicing before a particular federal tribunal, and practicing law generally in the forum state. *See In re Peterson,* 163 B.R. 665, 673 (Bankr.D.Conn.1994); *Attorney Grievance Comm'n v. Harris–Smith,* 356 Md. 72, 737 A.2d 567 (1999). In an analogous case, the United States Bankruptcy Court for the District of Connecticut rejected the argument that a lawyer licensed to practice law in one state is authorized to practice bankruptcy law in another by virtue of his admission to practice before the federal courts in the state where he is not li-

censed. Rittenhouse makes the same argument, which this court likewise rejects. *See In re Peterson,* 163 B.R. at 673 ("The flaw in that argument is that it fails to recognize the distinction between the right to practice in a court and the right to practice law generally."). The *Peterson* court concluded, as does this court, that the right to practice law "does not derive from a local rule which permits an attorney to practice in a court." *In re Peterson,* 163 B.R. at 673.[14]

The applicable Federal Rule of Bankruptcy Procedure draws the identical distinction between the admission of lawyers to practice before the court, and the regulation of the practice of law generally. In relevant part, FED. R. BANKR. P. 9010 provides that a debtor or other party may appear "by an attorney authorized to practice in the court...." FED. R. BANKR. P. 9010(a). Because the word "attorney" is defined in the Code,[15] the rule authorizing a debtor or other party to appear through counsel actually has a *dual* aspect: the representative must be both an "attorney" (*i.e.,* "authorized by applicable law to practice law") and "authorized to practice in the court." Therefore, although Rittenhouse may be "authorized to practice in the court" by virtue of his membership in the federal bar, he is not necessarily an authorized representative in bankruptcy court; he must also be an "attorney" within the meaning of the Code. Thus, under the Federal Rules of Bankruptcy Procedure, there is a major difference between being "authorized by applicable law to practice law" and being "authorized to practice in the court." Were it otherwise, FED. R. BANKR. P. 9010 would have simply permitted a debtor or other party to ap-

---

**14.** Rittenhouse's reliance on *Brown v. Smith (In re Mendez),* 231 B.R. 86 (9th Cir. BAP 1999), is misplaced, because that case is inapposite on its facts. In *Mendez,* the out-of-state attorney was just that—out-of-state. He did not have an office in the forum state for the practice of law (as does Rittenhouse), and did not hold himself out to the public generally as being permitted to give legal advice on bankruptcy-related matters.

**15.** The Code's definition of "attorney" governs the use of that word in the Federal Rules of Bankruptcy Procedure. *See* FED. R. BANKR. P. 9001 ("The definitions of words and phrases in § 101 ... of the Code govern their use in these rules.").

pear through an "entity"[16] or "person"[17] who is "authorized to practice in the court."

"[C]ertain acts constitute the practice of law and may not be performed by non-lawyers." *In re Bright,* 171 B.R. 799, 801 n. 1 (Bankr.E.D.Mich.1994) (Shapero, J.) (construing FED. R. BANKR. P. 9010). The Rule recognizes this, *id.,* and therefore cannot be read as itself authorizing a representative to take acts constituting the practice of law. Rather, the Rule respects the hegemony of the States in this area. Indeed, if this court were to mistakenly read FED. R. BANKR. P. 9010 as authorizing the practice of law by a non-lawyer, the Rule would effectively enlarge a substantive right, namely the right to practice law in Michigan—a right enjoyed only by members of the State Bar. *See* Mich. Comp. Laws Ann. § 600.901; 28 U.S.C. § 2075 (federal rules cannot "abridge, enlarge, or modify any substantive right"); *In re Peterson,* 163 B.R. at 673 (right to practice law does not derive from federal court rules). Because the local rules governing the representation of parties must be presumed to be consistent with the national rules, and the national rules cannot enlarge or modify any substantive right, this court will not construe the local rules as authorizing Rittenhouse to practice law generally in the State of Michigan.

c. *Rittenhouse Is Not an "Attorney" When Attempting to Practice Bankruptcy Law in Michigan.*

 Having considered the local rules and the Federal Rules of Bankruptcy Procedure, the court concludes that federal law does not conflict with state law concerning the practice of law, and that Rittenhouse's preemption argument is fallacious and erroneous. *See In re Bright,* 171 B.R. at 801 (Michigan law governing the practice of law is not preempted by Bankruptcy Code or Rules). The local rules govern the admission to practice before the court, and Michigan law governs the practice of law generally. Each set of laws is supreme within its respective sphere. Therefore, this court holds that Rittenhouse is not an "attorney" within the meaning of the Code because (with respect to his Michigan conduct and clients) he is not "authorized by applicable law to practice law." 11 U.S.C. § 101(4).[18]

C. *Rittenhouse Is a Bankruptcy Petition Preparer.*

 Because Rittenhouse is not an "attorney" with respect to his Michigan conduct and clients, the court must next consider the applicability of section 110 of the Code, which governs bankruptcy petition preparers. Section 110, a consumer protection measure, defines the term "bankruptcy petition preparer" both negatively (by excluding "attorneys" and their employees from the definition), and positively (by specifying the affirmative acts that bring a person within the definition). Specifically, the term "bankruptcy petition preparer" means "a person, *other than an attorney* or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1) (emphasis added).

**16.** 11 U.S.C. § 101(15) (defining "entity").

**17.** 11 U.S.C. § 101(41) (defining "person").

**18.** Sometimes decisions may cause unintended consequences. The undersigned judge has considered the possible effect of this opinion on out-of-state bankruptcy practitioners who appear on a temporary basis to handle a discrete matter. Because Michigan's proscription against the unauthorized practice of law "does not apply to a person who is duly licensed and authorized to practice law in another state *while temporarily in this state and engaged in a particular matter,*" Mich. Comp. Laws Ann. § 900.916 (emphasis added), the court acknowledges that such practitioners would be "authorized by applicable law to practice law" in Michigan (albeit on a temporary basis) and would therefore be "attorneys" within the meaning of the Code. This opinion, in short, should not be read as prohibiting out-of-state attorneys from handling a discrete case, adversary proceeding, or contested matter pending before this court.

Because Rittenhouse is not an "attorney," he will bring himself within the definition of "bankruptcy petition preparer" if he "prepares for compensation a *document for filing*." *Id.*[19] The italicized phrase is defined to mean "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court ... in connection with a case under this title." *Id.* § 110(a)(2). The testimony unequivocally established that Rittenhouse has prepared for filing with this court bankruptcy petitions, schedules, statements of affairs, and other documents for debtors, specifically Messrs. Desilets and Lampi, and has accepted fees (including filing fees) for doing so. *See* Tr. at 37–39, 63, 67–68. He has similarly prepared "documents for filing" on behalf of approximately seven hundred debtors during 1998 and 1999. Tr. at 26–27. With respect to these activities, and as a result thereof, Rittenhouse is a bankruptcy petition preparer and controlled by section 110 of the Code.

### D. *Acts Constituting the Practice of Law*

■ The Motion also raises the issue of whether Rittenhouse has engaged in the unauthorized practice of law. The task of defining what acts constitute the practice of law in Michigan has historically fallen to the judiciary. *See In re Bright*, 171 B.R. at 801–02 (*citing Cramer*, 399 Mich. at 132, 249 N.W.2d at 7, *and Ingham County Bar Ass'n v. Walter Neller Co.*, 342 Mich. 214, 69 N.W.2d 713 (1955)). In the context of bankruptcy, "advertising professional guidance to clients, arranging personal conferences with clients, preparing documents, filing completed documents with the court, and personally advising clients as to proper testimony is the practice of law...." *In re Bright*, 171 B.R. at 802.

More specifically, the following activities have been held to constitute the practice of law in the bankruptcy setting: (1) determining when to file bankruptcy cases; (2) deciding whether to file a chapter 7 or a chapter 13 case; (3) filling out or assisting debtors in completing forms or schedules; (4) soliciting financial information from debtors; (5) providing clients with definitions of legal terms; (6) giving advice on exemptions; (7) preparing motions and answers to motions; (8) advising debtors with respect to dischargeability issues; (9) advising debtors concerning the automatic stay; (10) drafting legal instruments for hire; (11) correcting errors or omissions on bankruptcy forms; and (12) advising clients on various bankruptcy remedies and procedures. *Id.*, 171 B.R. at 802–03 (citations omitted) (enumerating conduct and collecting cases); *In re Pinkins*, 213 B.R. 818, 820–21 (Bankr.E.D.Mich.1997) (Rhodes, C.J.) (same). Because the court's findings are that Rittenhouse has performed most, if not all, of these enumerated activities, the court readily concludes that Rittenhouse has engaged in the practice of law in Michigan. The court also concludes, without difficulty, that because Rittenhouse is not a member of the State Bar, his practice of law was not authorized. Moreover, Rittenhouse may not avail himself of the out-of-state attorney's "safety valve" contained in Mich. Comp. Laws Ann. § 600.916 because he is *permanently and regularly* practicing in Michigan, and not merely temporarily engaged in a particular, discrete matter in this district.

■ Finally, even after crediting Rittenhouse's testimony that he typically explained his professional licensing status to his clients, his disclaimers are hollow. His conduct still constitutes the unauthorized practice of law. *See In re Bright*, 171 B.R. at 803. The prophylactic purposes of Michigan's licensing of counsel would be totally gutted if lay practitioners (such as Rittenhouse is in Michigan), were permitted to insulate themselves from liability for the unauthorized practice of law merely by

**19.** Rittenhouse evidently recognized this possibility as early as 1995 when, in response to the letter from the State Bar, he identified himself on several documents filed with the court as a "bankruptcy petition preparer." *See* Tr. at 29, 31.

giving a disclaimer. In this context, disclaimers are ineffectual. *Id.*

### E. *Appropriate Relief*

Having determined that Rittenhouse (1) is not an attorney, (2) that he qualifies as a bankruptcy petition preparer, and (3) that he has engaged in the unauthorized practice of law, the court must now consider types of appropriate relief.

#### 1. *Suspension or Disbarment Under Local Rule (Bankr.W.D. Mich.) 2093*

■■■ The principal relief that Delta requests through this Motion is an order barring or suspending Rittenhouse from practicing before the court pending his admission to the State Bar. As stated at the beginning of the hearing, Rittenhouse shall not be suspended or disbarred absent *en banc* action by this court. Tr. at 9. Accordingly, the undersigned judge will refer this matter to the other judges of the court for *en banc* consideration to take place as soon as practicable.[20] If, however, Rittenhouse continues to engage in the unauthorized practice of law, the undersigned judge could certainly revisit the question of other relief, short of suspension or disbarment, without an *en banc* consideration.

#### 2. *Disgorgement of Attorney Fees Under Section 329*

Because Rittenhouse is not an "attorney" within the context of this bankruptcy case or the *Lampi* case, the remedy provided by section 329 does not, by its express terms, apply. *See* 11 U.S.C. § 329.[21] However, without expressing an opinion regarding the availability of section 329 as authority for ordering disgorgement in this case, the court prefers to consider disgorgement of fees within the framework of section 110. *But see In re Bachmann,* 113 B.R. 769 (Bankr.S.D.Fla.1990) (erroneously stating that the Code does not define "attorney," and applying section 329 to lay practitioner).

#### 3. *Remedies Under Section 110*

The legal consequences, and appropriate relief, resulting from Rittenhouse's activities as a bankruptcy petition preparer, are set forth in section 110 of the Code.

#### a. *Fines*

■■■ The evidence admitted at the March 10, 2000 hearing showed that, with the exception of a few cases in 1995, Rittenhouse did not identify himself as a bankruptcy petition preparer by using his social security number (contrary to 11 U.S.C. § 110(c)(2)), that he failed to furnish Louis Lampi with a copy of his petition and schedules (contrary to 11 U.S.C. § 110(d)(1)), that he used the word "legal" in his advertising (contrary to 11 U.S.C. § 110(f)),[22] and that he accepted filing fees from debtors (contrary to 11 U.S.C. § 110(g)). The court holds that Ritten-

---

**20.** The local rules of this court require that before a member of the bar of this court may be barred or suspended from practice, the court must afford the member "notice and an opportunity" to be heard. *See* Local Rule (Bankr.W.D.Mich.) 2093(a); 11 U.S.C. § 102(1). Because "notice and an opportunity to be heard" is a flexible concept in bankruptcy, the undersigned judge believes it may be reasonable to construe this local rule as not necessarily requiring an *en banc* hearing, but only as requiring "a majority vote" of all the judges of this court. Local Rule (Bankr. W.D. Mich.) 2093(a). In any event, after referral, the bankruptcy judges will decide whether a supplemental hearing will take place, or whether a review of the existing

record is sufficient. *Cf. In re Ludwick,* 185 B.R. at 238 (initial hearing held before Judge Stevenson but continued to another *en banc* hearing to consider possible suspension; however, some nonsuspension issues were determined by Judge Stevenson at the initial hearing).

**21.** Section 329 of the Code provides that if the compensation of a debtor's attorney for legal services "exceeds the reasonable value of any such services, the court may ... order the return of any such payment, to the extent excessive...." 11 U.S.C. § 329(b).

**22.** *See* State Bar Exh. 3A & 3B.

house has violated several subsections of section 110.

Although the court is aware that Rittenhouse prepared approximately seven hundred petitions on behalf of debtors for filing with this court in the last two years, Tr. at 27, and has accepted compensation for doing so, Tr. at 39, the court elects to now impose fines only with respect to Rittenhouse's conduct in the cases of *In re Desilets*, Case No. 99–90364, and *In re Lampi*, Case No. 99–90387. Both of these debtors testified at trial and Rittenhouse's attorney had the opportunity to examine them. In all other cases, this court lacked the opportunity to hear witnesses and review documents entered into evidence. *See In re Farness*, 244 B.R. 464, 469 (Bankr.D.Idaho 2000) (although evidence may have supported fines in approximately 700 cases, court elected to impose fine only with respect to single case in which relief was requested). Nevertheless, to emphasize the importance that the court attaches to section 110, and to deter any possible future violations, the court will award the maximum fine allowable per infraction. Accordingly, the court's judgment will impose the following fines under 11 U.S.C. § 110:

(1) $500 in connection with the bankruptcy petition of Louis Lampi, for Rittenhouse's failure to identify himself as a bankruptcy petition preparer using his social security number, in violation of 11 U.S.C. § 110(c)(1);

(2) $500 in connection with the petition of Ernest Desilets, for Rittenhouse's failure to identify himself as a bankruptcy petition preparer using his social security number, in violation of 11 U.S.C. § 110(c)(1);

(3) $500 in connection with the petition of Louis Lampi, for Rittenhouse's failure to furnish the debtor with a copy of the petitions and schedules, in violation of 11 U.S.C. § 110(d)(1);

(4) $500 in connection with the petition of Louis Lampi, for Rittenhouse's use of the word "legal" on the signs at his office in Iron Mountain, Michigan, in violation of 11 U.S.C. § 110(f)(1);

(5) $500 in connection with the petition of Ernest Desilets, for Rittenhouse's use of the word "legal" on the signs at his office in Iron Mountain, Michigan, in violation of 11 U.S.C. § 110(f)(1);

(6) $500 in connection with the petition of Louis Lampi, for Rittenhouse's collection of filing fees, in violation of 11 U.S.C. § 110(g)(1); and

(7) $500 in connection with the petition of Ernest Desilets, for Rittenhouse's collection of filing fees, in violation of 11 U.S.C. § 110(g)(1).

█ The court will also award Delta its costs. FED. R. BANKR. P. 7054(b); 28 U.S.C. § 1918(a). Delta shall file a bill of costs within fifteen days of the service of this opinion and the attendant judgment, and serve a copy upon Rittenhouse's attorney for possible objection. If no objection is filed within fifteen days of service of the bill of costs, this court will enter a separate order allowing Delta's requested costs. If an objection to the costs is timely filed, the court will conduct a hearing as soon as is practicable.

Because the court has an obligation under 11 U.S.C. § 110(i)(1) to certify the fact of these violations to the district court, the court will send a copy of this opinion and the accompanying order to Chief Judge Richard A. Enslen, United States District Court for the Western District of Michigan, and, to Ronald C. Weston, Sr., Clerk of the Court. Pursuant to § 110(i)(1) and (i)(2), if a motion is made by a party-in-interest, e.g., Delta, the district court, in its discretion, may determine to award damages or grant other relief.

b. *Disgorgement of Fees*

█ Per the Code, the court is directed to disallow and order the *immediate* turnover to the trustee of "any fees found to be in excess of the value of the services rendered for the documents prepared." 11 U.S.C. § 110(h)(2). Rittenhouse, or any other party, has not offered any evidence as to the value of the services

rendered in preparing the documents for filing in the cases of Messrs. Desilets and Lampi. However, the court believes that any fee collected by Rittenhouse for legal advice in those two bankruptcy cases would be without value, because Rittenhouse was not authorized to give any advice. Moreover, the court believes that Rittenhouse, as the party seeking to retain the fee, had the burden of establishing the value of his services. *Cf. In re Pinkins*, 213 B.R. 818, 825 (Bankr.E.D.Mich.1997) (court will not "indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself"). Accordingly, the court's judgment will direct Rittenhouse to disgorge to the Desilets and Lampi estates $72 and $800, respectively.

### 4. *Declaratory and Injunctive Relief*

 Although the court has the authority to enjoin the unauthorized practice of law under section 110(j), and probably under section 105 (to prevent an abuse of the court's local rules and orders), the court declines to do so at this time. Rather, for a variety of reasons, the court believes that the less drastic remedy of declaratory relief is the more appropriate remedy. First, because Rittenhouse is still a member of the bar of this court, the court continues to have authority over his activities. The court predicts that Rittenhouse will cease all prohibited activities as a result of this opinion, and that he will not risk being disciplined in this court, and in Texas,[23] for flouting this court's judgment. Second, by withholding injunctive relief at this time, this court gives deference to the state circuit judge who is presiding over the proceeding initiated by the State Bar against Rittenhouse. Comity between the state courts and this bankruptcy court should be fostered. Should it appear, however, that declaratory relief is ineffectual, the court will not hesitate to grant additional relief either *sua sponte* or upon the further request of any interested party.[24] Accordingly, the court's judgment will declare that the local rules of this court do not authorize Rittenhouse to engage in the general practice of law in Michigan.

### 5. *Certification of Finality of Judgment*

 Delta's Motion presents several claims for relief under the Code and the local rules. Because the undersigned judge, acting alone, cannot rule on the request to suspend Rittenhouse from membership in the bar of this court, this opinion will not resolve all of the claims for relief. The accompanying judgment, therefore, would not be regarded as final and appealable, absent certification under FED. R. CIV. P. 54(b) (made applicable herein by FED. R. BANKR. P. 7054 and 9014). Under the circumstances, and after considering the Sixth Circuit's opinion in *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir.1994), the court finds that there is no just reason for delaying the entry of a final judgment pending the court's *en banc* consideration of the request to suspend Rittenhouse from membership in the bar of this court.

Although Delta's claims all derive from Rittenhouse's unauthorized practice of law, and are therefore related, they neverthe-

---

**23.** *See* Texas Rules of Disciplinary Procedure, Part IX (Reciprocal Discipline) (reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (West 1999)).

**24.** Any misconception by Rittenhouse that opening an office in Texas or Wisconsin will somehow authorize the practice of law in Michigan, or immunize him from future consequences, will not receive a welcome reception by the undersigned judge. *See* Tr. at 118. Rittenhouse should not attempt to engage in gamesmanship with this court and further is advised to refrain from the unauthorized practice of law in Michigan, regardless of where he (actually or constructively) hangs his legal hat. *See Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 949 P.2d 1, 5 (noting, in dicta, that physical presence in the state is one factor to consider in determining whether out-of-state attorney has engaged in the unauthorized practice of law), *cert. denied*, 525 U.S. 920, 119 S.Ct. 291, 142 L.Ed.2d 226 (1998).

less involve distinct interests. Unlike most disputes between private parties, this one directly involves the interests of the court in its own right—its inherent authority and need to regulate its affairs, and the conduct of its officers, including Rittenhouse. Indeed, the requirement of *en banc* consideration underscores the unique and institutional importance of the request to suspend Rittenhouse from practicing before this court.

Second, the court does not believe that future developments in the bankruptcy court would moot the need for appellate review of today's judgment. Regardless of whether the bankruptcy court suspends Rittenhouse in the future, the district court will likely be called upon to review this opinion and its attendant judgment. Nor is there a likelihood that, by certifying today's judgment as final, the district court will be called upon to review the same issues twice.[25]

Finally, the court is concerned about the impact of today's opinion and the accompanying judgment on Rittenhouse, his family, those who seek his counsel, and upon the public interest of the citizens of Michigan. It is in the best interests of all parties, and the public, to have the matter of Rittenhouse's authority to practice law resolved finally and quickly, without awaiting the *en banc* determination regarding his membership in the bar of this court. Accordingly, the judgment accompanying this opinion will be regarded as a final judgment, and therefore immediately appealable.

**25.** There can be no controversy about the court's findings of fact, since the facts are essentially undisputed. And, if the district court determines that Rittenhouse is, contrary to this court's conclusion, authorized by applicable law to practice law, everyone (including the bankruptcy court *en banc*) will be bound by that determination. The only issue that is likely to be raised on appeal from any order involving Rittenhouse's membership in the bar of this court is the appropriateness of the court's exercise of discretion with respect to his continued membership.

**26.** The Clerk's notice should inform debtors that Rittenhouse is not authorized to repre-

### 6. *Notice to Debtors*

The court believes that, in order to prevent prejudice to debtors who have retained Rittenhouse, it is necessary and appropriate to apprise them of this decision, and the effect it has on Rittenhouse's authority to represent them in the bankruptcy court. Therefore, the court will direct the Clerk to give notice of this decision to all debtors represented by Rittenhouse in cases pending before the court.[26]

## VI. CONCLUSION

■ This court cannot "sanction a practice whereby a lawyer not admitted to practice by a state maintains an office there and holds himself out to give advice to all comers on federal matters." *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir.) (*en banc*), *cert. denied*, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966); *In re Peterson*, 163 B.R. at 675.[27] The practice is especially noxious when done under the aegis of the court's own rules. Although the court has now declined to use all of its permissible powers to impose sanctions or grant relief, the parties should not underestimate this court's resolve in preventing an abuse of its rules or the violation of Michigan law governing the practice of law.

Separate consideration of the suspension or disbarment issue will soon take place by all judges of this bankruptcy court. In the meantime, the court will prepare a sepa-

sent or advise them with respect to their bankruptcy cases, and that they may either represent themselves *in propria persona*, or retain substitute counsel.

**27.** The court soundly rejects Rittenhouse's implicit argument that a person can practice "bankruptcy law" without practicing state law. *See In re Peterson*, 163 B.R. 665, 673 (Bankr.D.Conn.1994) ("bankruptcy law is in many instances only a federal overlay to applicable state law"). The court also rejects the suggestion that Michigan has no interest in regulating the practice of federal law within the State. *Id.*, 163 B.R. at 675.

rate final judgment in conformity with this opinion.